FILED
CLERK
8/11/2025 11:51 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────X

For Online Publication Only

JOSEPH WIESEL,

      Plaintiff,

 -against-

**ORDER**
19-cv-7261 (JMA) (JMW)

APPLE INC.,

      Defendants.
─────────────────────────────────────────X

**AZRACK, United States District Judge:**

  Plaintiff Joseph Wiesel ("Dr. Wiesel" or "Plaintiff") brings this action for Patent Infringement against Apple Inc. ("Apple" or "Defendant") pursuant to 35 U.S.C. § 271 for Defendant's alleged infringement of Dr. Wiesel's U.S. Patent No. 7,020,514 (the "514 Patent"). (See ECF No. 1.)  Presently before the Court is Judge Wicks' R&R recommending that Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) be granted in its entirety. (See ECF No. 79.)  For the following reasons, the Court adopts Judge Wicks' R&R in its entirety.

       **I.**  **DISCUSSION**

  In reviewing a magistrate judge's report and recommendation, a court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made." 28 U.S.C. § 636(b)(1)(C); see also United States ex rel. Coyne v. Amgen, Inc., 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), aff'd sub nom., Coyne v. Amgen, Inc., 717 F. App'x 26 (2d Cir. 2017).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Those portions of a report and recommendation to which there is no specific reasoned objection are reviewed for clear

1

error.  See Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008).  The Court finds no clear error in the portions of Magistrate Judge Wicks' R&R to which there are no objections.  Next, the Court turns to the portions of the R&R to which Plaintiff has objected.  After conducting a de novo review of the full record (including the motion papers, transcript of the oral argument conducted on April 17, 2025, R&R, objections, and responses to objections) and applicable law, the Court agrees with Magistrate Judge Wicks' recommendations, and therefore adopts the R&R in its entirety as the opinion of the Court.  Accordingly, Defendant's Motion to Dismiss is GRANTED, and Plaintiff's complaint is dismissed for lack of standing and because Plaintiff's asserted patent is directed to ineligible subject matter under 35 U.S.C. § 101.

### A.     **Plaintiff Lacks Prudential Standing**

Judge Wicks correctly found that Dr. Wiesel lacks prudential standing in view of the rights he transferred to MLC in the September 2006 exclusive license, and which MLC retained after the December 2019 Amendment.  (ECF Nos. 68-4 (September 2006 Agreement), 68-5 (December 2019 Amendment).)  Despite Plaintiff's arguments and objections to the contrary, the Court agrees with Judge Wicks' reasoning that while the December 2019 Amendment reverted back to Dr. Wiesel the right to sue for infringement of the '514 patent, MLC retained rights materially limiting Dr. Wiesel's right to transfer the patent.  (ECF No. 79 (R&R) at 23–24.)  As a result of MLC's rights limiting Dr. Wiesel's ability to alienate the '514 patent, Plaintiff lacks prudential standing without MLC. (See id.)  Dr. Wiesel objects to this ruling, alleging that because he did not transfer away all his rights, he had prudential standing as a "patentee" and was not required to join MLC. (ECF No. 82 ("Pl.'s Objection") at 5.)  The Court disagrees.

As Judge Wicks found, Dr. Wiesel lacks prudential standing to bring suit against Apple because MLC still holds substantial rights to the '514 patent that materially limit Dr. Wiesel's

ability to alienate his interest in the patent. (ECF No. 79 at 23-24.) In conducting this analysis, Judge Wicks noted:

> Per the December Agreement, Dr. Wiesel would be required to first seek the written consent of MLC before any sale, transfer, or assignment of "any portion" of the "Non-Exclusive Licensed Technology" could occur. (ECF No. 68-5, at ¶ 16.D.) Additionally, Dr. Wiesel agreed to be bound by a "Right of First Negotiation Clause," not previously present in the September Agreement. This clause required that before any non-exclusive license could be granted by Dr. Wiesel to a third party, MLC must first be given "90 days" to make "such a Non-Exclusive Patent a Patent" (*Id.* at ¶ 17.) Only upon no agreement being reached could Dr. Wiesel then ben free to grant such non-exclusive license. (*Id.*)
>
> Under the December Agreement then, despite the grant of a "non-exclusive license," Dr. Wiesel's right of alienation to the '514 Patent is materially limited by MLC's retained control over that alienation. Regarding the substance of the agreement, Dr. Wiesel cannot sell, transfer, assign, or license any portion of the '514 Patent to any third party without the written consent of MLC. (ECF No. 68-5 at, ¶¶ 14, 17); *Lone Star*, 925 F.3d at 1233 (explaining that a requirement of consent prior to alienation "will always control how the patents are asserted"); *Propat*, 473 F.3d at 1191 ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."); *Sicom*, 427 F.3d at 979 (noting that the lower court's finding of the restriction on alienation was a "fatal" reservation of rights by the transferor).

(ECF No. 79 at 23-24.) Given these findings, Judge Wicks correctly reasoned the December 2019 Amendment "grants to Dr. Wiesel, in effect, only the right to pursue litigation against alleged third-party infringers," akin to a "hunting license." (Id.) Given the material control granted through contract to MLC, it is a necessary party to this action. See, e.g., Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1233 (Fed. Cir. 2019) (explaining that a requirement of consent prior to alienation "will always control how the patents are asserted"); Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."); Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 979 (Fed. Cir. 2005) (noting that the lower court's finding of the restriction on alienation was a "fatal" reservation of rights by the transferor).

3

Indeed, Lone Star held that "a 'right to sue' clause cannot confer standing on a bare licensee. To hold otherwise would allow a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation, in the form of a pro forma exclusive license. The Supreme Court long ago disapproved of such arrangements." Lone Star, 925 F.3d at 1233.

Plaintiff's objections do not disturb Judge Wicks' reasoning or conclusions in this regard, nor do they articulate a sufficient basis to confer prudential standing upon Plaintiff based on any other rationale. Furthermore, they do not address Defendant's argument that the totality of the rights retained by MLC necessitate finding that Dr. Wiesel does not now have *all* substantial rights in the '514 patent, and therefore lacks prudential standing to sue on his own. (See ECF No. 65 at 8-9; ECF No. 68-10 at 3; ECF No. 85 at 9-10.) Therefore, the Court adopts Judge Wicks' finding that Plaintiff lacks prudential standing.

**B.      Patent Eligibility Under 35 U.S.C. § 101**

Judge Wicks also correctly determined that the asserted claims of the '514 patent are directed to ineligible subject matter and are therefore unpatentable under 35 U.S.C. § 101. Patent ineligibility is governed by the two-step framework set forth in Alice Corp. v. CLS Bank, Int'l, 573 U.S. 208 (2014). At step one, the inquiry—whether the claims are directed to an abstract idea—is purely a legal question. See Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1358–59 (Fed. Cir. 2020). Judge Wicks properly conducted the Alice Step One analysis under this framework, analogizing Dr. Wiesel's claims to existing Federal Circuit precedent and concluding that the claims as a whole are "directed at the abstract processes of detecting, analyzing, determining, and indicating data"— nothing more. (ECF No. 79 at 26, 33.) At step two, Judge Wicks correctly found the '514 patent's claims lack any inventive concept that would "transform" them "into a patent-eligible application of the abstract idea." (Id. at 34.) The Court has reviewed

4

Plaintiff's objections to each aspect of Judge Wicks' analysis and concludes that they do not disturb the conclusion that the asserted claims of the '514 patent are directed to ineligible subject matter and are therefore unpatentable under 35 U.S.C. § 101.

In conducting the Alice Step One analysis, Judge Wicks compared the claims of the '514 patent to Federal Circuit's precedent in the CardioNet I and CardioNet II cases to determine that the claims fall within the abstract idea category.[1]  Plaintiff objects, contending that Judge Wicks erred by aligning the claims with those in CardioNet II, rather than recognizing them as patent-eligible for the same reasons discussed in CardioNet I.  (See Pl's Objection at 14–18.)  As is thoroughly discussed in the R&R, however, Dr. Wiesel's asserted claims recite no limitations or other technology that go beyond simply detecting, analyzing, and displaying data for identifying "possible atrial fibrillation" by conventional means.  (ECF No. 79 at 32-33); see also CardioNet II, 816 F. App'x at 475.  These are the very type of claims that the Federal Circuit affirmed are patent ineligible under Section 101 in CardioNet II.  See id.  Therefore, Judge Wicks correctly concluded that the claims of the '514 patent are directed toward an abstract idea under the Alice Step One analysis.

In conducting the Alice Step Two analysis, Judge Wicks found that the '514 patent's claims lack any inventive concept that would "transform" them "into a patent-eligible application of the abstract idea."  (ECF No. 79 at 34.)  Plaintiff objects, listing four limitations he argues are enough to amount to an "inventive concept" under Alice Step Two: "(1) the detection of atrial fibrillation from 'irregular' pulse rhythms; (2) the use of standard deviations to determine when pulse rhythms are sufficiently irregular to suggest atrial fibrillation; (3) the use of photoplethysmography (PPG)

---

[1] CardioNet, LLC v. InfoBionic, Inc., 955 F.3d 1358 (Fed. Cir. 2020) (CardioNet I) (holding that patent claims were not directed to patent-ineligible abstract idea); CardioNet, LLC v. InfoBionic, Inc., 816 Fed. Appx. 471 (Fed. Cir. 2020) (CardioNet II) (holding that patent claims were directed to an abstract idea and claims of patents did not describe an inventive concept).

and/or a sphygmomanometer to detect these irregular pulse rhythms"; and (4) time intervals. (Pl's Objection at 19.) As Judge Wicks determined, however, none of these amounts to something significantly more than the abstract idea found at <u>Alice</u> Step One, and therefore, they do not save the claims. (ECF No. 79 at 37.) The Court finds that Judge Wicks' R&R thoroughly analyzed and considered each of the relevant factors necessary for the <u>Alice</u> Step Two analysis, which were also discussed at the oral argument hearing on April 17, 2025. (<u>See</u> ECF Nos. 78, 79.) Having reviewed the motion papers, transcript of the oral argument, R&R, and objections, the Court adopts Judge Wicks' conclusion that the '514 Patent fails the <u>Alice</u> Step Two analysis and that the claims underlying the '514 Patent fail to articulate an inventive concept that would transform them into a patent-eligible application.

## II. CONCLUSION

Accordingly, Defendant's motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed. The Clerk of Court is respectfully requested to close ECF Nos. 65 and 79, enter judgment, and close this case.

**SO ORDERED.**

Dated: August 11, 2025
Central Islip, New York

                                                  /s/ JMA
                                           JOAN M. AZRACK
                                           UNITED STATES DISTRICT JUDGE